UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| **MARIE A. DICOWDEN,**<br>3610 Yacht Club Drive Apt 1108<br>Aventura, FL 33180<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**PNC BANK, NATIONAL ASSOCIATION,**<br>Corporation Service Company<br>50 West Broad Street Suite 1330<br>Columbus, OH 43215 | Case No. 3:18-cv-00148 |

## COMPLAINT

Plaintiff, Marie A. DiCowden, by and through counsel, for her Complaint against Defendant, PNC Bank, National Association, states:

### PARTIES, JURISDICTION, AND VENUE

1. Marie A. DiCowden ("DiCowden" or "Plaintiff") is the owner of real property and the improvements thereupon located at 123 Wolfe Street, Alexandria, VA 22314 (the "Home").

2. DiCowden currently maintains the Home as her primary, principal residence, and has so maintained the Home at all times relevant to the allegations in this Complaint.

3. PNC Bank, National Association ("Defendant" or "PNC") is the current servicer of a note executed by DiCowden (the "Note") and a mortgage on the Home executed by DiCowden that purportedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), and the Real

1

Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA).

5. This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.41 of Regulation X.

6. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred within this District as Defendant maintains a significant majority of their mortgage servicing operations within this District.

## INTRODUCTION AND BASIS FOR RELIEF

7. DiCowden brings this case against PNC because she is a victim of "dual-tracking" "by PNC. As detailed herein below, DiCowden sought to save her Home by submitting a complete loss mitigation application. Despite this fact, PNC allowed the non-judicial foreclosure process to be initiated against her.

8. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

9. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

10. The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

11. PNC is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

2

12. DiCowden has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches which provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## DICOWDEN'S FINANCIAL DIFFICULTIES, FORECLOSURE, AND ATTEMPTS TO SAVE THE HOME

13. Like many individuals, over the past decade DiCowden had fallen under economic hardship due to a personal healthcare crisis that resulted in a reduction in her income as a psychologist. As a result, DiCowden feared for her ability to make her payments on the Loan and was fearful of the possibility of losing her Home to a foreclosure sale. In an effort to save her Home, DiCowden submitted a complete loss mitigation application to PNC in September of 2017.

14. Specifically, DiCowden submitted a loss mitigation application to PNC on or about August 27, 2017 ("Submission #1). A true and accurate copy of the successful fax transmission for Submission #1 is attached as *Plaintiff's Exhibit 1*.

15. On or about August 30, 2017, PNC sent correspondence to DiCowden, stating that DiCowden needed to submit additional documentation to proceed with the loss mitigation process ("Request #1"). A true and accurate copy of Request #1 is attached as *Plaintiff's Exhibit 2*.

16. On September 29, 2017, DiCowden submitted any and all documents requested by and through Request #1 to PNC via email correspondence to an individual identified as Ed R., a representative of PNC, at Ed.R@pnc.com ("Submission #2"). A true and accurate copy of the cover page for the Submission #2 is attached as *Plaintiff's Exhibit 3*.

17. On October 2, 2017, PNC sent correspondence to DiCowden acknowledging receipt of Submission #2. A true and accurate copy of such correspondence is attached as

3

*Plaintiff's Exhibit 4.*

18. Submission #2 rendered DiCowden's pending loss mitigation application facially complete as of September 29, 2017. See *Plaintiff's Exhibits 1-4*.

19. On or before October 9, 2017, Samuel A. White, P.C. ("Foreclosure Counsel") sent correspondence to DiCowden advising that their law firm had been retained to initiate foreclosure proceedings against the Home. A true and accurate copy of such correspondence is attached as *Plaintiff's Exhibit 5*.

20. On or about October 17, 2017, PNC requested via telephone that DiCowden submit additional documentation to proceed with the loss mitigation process ("Request #2").

21. On or about October 23, 2017, DiCowden submitted any and all documents requested by and through Request #2 to PNC via certified mail ("Submission #3"). A copy of the "Product & Tracking Information" from the website for the United States Postal Service (USPS) (www.usps.com) for Submission #3 is attached as *Plaintiff's Exhibit 6*.

22. On or about October 30, 2017 PNC sent correspondence to DiCowden, stating that DiCowden needed to submit additional documentation to proceed with the loss mitigation process ("Request #3"). A true and accurate copy of Request #3, is attached as *Plaintiff's Exhibit 7*.

23. Before rendering a decision on the loan, despite all of DiCowden's efforts and responsiveness to each request and PNC therefore being in possession of a facially complete, if not fully complete, application, PNC allowed the owner of the Loan to initiate the foreclosure process by scheduling a Trustee's Sale for December 6, 2017 and recording notice of such on or before November 2, 2017 in the Clerk's Office of Circuit Court of the City of Alexandria, Virginia (the "Initial Foreclosure") in violation of Regulation X of the Real Estate Settlement

Procedures Act (RESPA) dual tracking provision. A true and accurate copy of correspondence sent by Foreclosure Counsel regarding the Initial Foreclosure is attached as *Plaintiff's Exhibit 8*; see also *Plaintiff's Exhibits 1-4*.

24. On or about November 13, 2017, DiCowden submitted any and all documents requested by and through Request #3 to PNC via email correspondence to Ed R. at Ed.R@pnc.com ("Submission #4"). A true and accurate copy of the successful email transmission is attached as *Plaintiff's Exhibit 9*.

25. Unable to confirmat Ed. R's receipt of Submission #4, DiCowden resubmitted Submission #4 on or about November 16, 2017, via email correspondence to Ed.R@pnc.com. See *Id.*

26. PNC sent email correspondence on or about November 17, 2017 acknowledging Submission #4. A true and accurate copy of such correspondence is attached as *Plaintiff's Exhibit 10*.

27. On or about November 20, 2017, Ed R. of PNC sent correspondence to DiCowden, stating that DiCowden needed to submit additional documentation to proceed with the loss mitigation process ("Request #4").

28. On November 20, 2017, DiCowden promptly submitted any and all documents requested by and through Request #4 to PNC via email correspondence to Ed R. of PNC at Ed.R@pnc.com ("Submission #5").

29. On or about December 1, 2017, PNC sent correspondence to DiCowden stating that:

> We have completed our review of your hardship assistance request however your assignee or loan owner, CHRISTIANA TRUST, A DIVISION OF WILMINGTON, FSB AS TRUSTEE FOR KNOXVILLE 2012 TRUST, cannot approve your request for

5

> assistance for the:
> - Modification (1) because you have insufficient income to afford a modified mortgage payment and pay required taxes, insurance and other related property expenses…
>
> We have completed our review of your hardship assistance request. However, we cannot approve your request for assistance for the:
> - 12-Month Repayment Plan because insufficient income; can not [sic] repay delinquency.
> - Extended 24 Month Repayment Plan because insufficient income; can not [sic] repay delinquency.
> - Full Payment Forbearance Plan because ***documentation has been received too close to the scheduled foreclosure sale date and does not allow sufficient time for review***.
> - Reduced Payment Forbearance Plan because ***documentation has been received too close to the scheduled foreclosure sale date and does not allow sufficient time for review.***
> - Suspended Payment Forbearance Plan becaus***e documentation has been received too close to the scheduled foreclosure sale date and does not allow sufficient time for review***…

(emphasis added) (the "Denial"). A true and accurate copy of the Denial is attached as *Plaintiffs' Exhibit 11*.

30. Despite refusing to review DiCowden for three (3) home retention options due to the scheduled foreclosure date being too close, on or before December 4, 2017, PNC agreed to postpone the Trustee's Sale scheduled for December 6, 2017 in order to consider DiCowden for non-retention loss mitigation options. A true and accurate copy of such correspondence is attached as *Plaintiff's Exhibit 12*.

31. Subsequently, despite PNC having failed to review DiCowden for any and all loss mitigation options offered by her investor, PNC allowed the owner of her Loan to initiate the foreclosure process by scheduling a Trustee's Sale of her Home for February 6, 2018 and recording notice of such on or before January 9, 2018 with the Clerk's Office of Circuit Court of the City of Alexandria, Virginia (the "Second Foreclosure"). A true and accurate copy of correspondence sent by Foreclosure Counsel regarding the Second Foreclosure is attached as

6

*Plaintiff's Exhibit 13*; see also *Plaintiff's Exhibits 1-3 and 12*

32. Left with no other option to save her Home, on or about February 2, 2018 DiCowden filed for bankruptcy (the "Bankruptcy"). A printout of the online docket for the Bankruptcy is attached as *Plaintiff's Exhibit 14*.

33. DiCowden remitted payment for attorneys' fees and costs of more than Four Thousand Five Hundred Dollars ($4,500.00) in order to file the Bankruptcy in order to save the Home from being sold on February 6, 2018. A true and accurate copy of the *Disclosure of Compensation for Attorney for Debtor(s)* filed in the Bankruptcy is attached as *Plaintiff's Exhibit 15*.

34. On or before February 6, 2017, the Trustee's Sale scheduled for February 6, 2018 was cancelled due to the Bankruptcy.

35. On or about February 19, 2017, Aldrige Pite, counsel for PNC, sent correspondence to DiCowden advising that there may be loss mitigation options available to her. A true and accurate copy of this correspondence is attached as *Plaintiff's Exhibit 16*.

36. On March 12, 2018, the Bankruptcy was dismissed. A true and accurate copy of the Order of Dismissal is attached as *Plaintiff's Exhibit 17*.

37. Subsequently, despite PNC having failed to review DiCowden for any and all loss mitigation options offered by her investor, PNC allowed the owner of her Loan to initiate the foreclosure process by scheduling a Trustee's Sale for May 16, 2018 and recording notice of such on or before April 11, 2018 with the Clerk's Office of Circuit Court of the City of Alexandria, Virginia (the "Third Foreclosure"). A true and accurate copy of correspondence sent by Foreclosure Counsel regarding the Third Foreclosure is attached as *Plaintiff's Exhibit 18*; see also, *Plaintiff's Exhibits 1-4 and 11*.

38. As time passed, PNC made clear through their inaction after the cancellation of the Initial Foreclosure and the Second Foreclosure that they had no intention of reviewing DiCowden's loss mitigation application for the loss mitigation options it had failed to consider her for due to the pending sheriff sale. Therefore, on or about April 17, 2018, DiCowden, by and through counsel, submitted a second loss mitigation application to PNC ("Submission #6") via facsimile transmission. A true and accurate copy of the facsimile cover page for Submission #6, outlining the documents constituting Submission #6, is attached as *Plaintiff's Exhibit 19*.

## DAMAGE TO DICOWDEN

39. Throughout this entire ordeal, DiCowden has simply wanted to save her Home, to responsibly resume her mortgage payments, and begin the lengthy process of rehabilitating her credit.

40. Due to PNC's conduct, DiCowden has lived with anxiety and stress caused by a fear that she would lose the Home to foreclosure without ever receiving a review of her loss mitigation application for **all** available loss mitigation options.

41. PNC's actions have caused DiCowden to: (1) Spend significant time gathering duplicative documents and filling out duplicative forms in order to be considered for loss mitigation; (2) spend money on paper, postage and legal fees to compile and send such submissions to PNC; and, (3) incur legal fees and expenses to file bankruptcy in her effort to save her Home from foreclosure. See *Plaintiff's Exhibits 14-15*.

## PATTERN AND PRACTICE OF RESPA

42. At the time of the filing of this Complaint, PNC has had at least Two Thousand and Thirty-Eight (2,038) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan

modification, collection, foreclosure" concerning mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (https://www.consumerfinance.gov/data-research/consumer-complaints/).

43. Plaintiff has reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by PNC against other borrowers. In particular, Plaintiff has reviewed the fifteen (15) consumer complaints attached hereto and identified as *Plaintiffs' Group Exhibit 20*. The date, details and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that PNC has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

## COUNT ONE
## VIOLATION OF 12 C.F.R. § 1024.41(f)

**(Failure to prevent Foreclosure Counsel from scheduling Initial Foreclosure)**

44. DiCowden restates and incorporates herein all of their statements and allegations contained in paragraphs 1 through 43 in their entirety, as if fully rewritten.

45. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

46. 12 C.F.R. §1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is complete and notify the borrower in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

47. Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than

90 days before any foreclosure sale."

48. 12 C.F.R. §1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to 12 C.F.R. §1024.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete."

49. Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(c)(2)(iv) provides that 12 C.F.R. §1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

50. 12 C.F.R. §1024.41(f)(2) states that "if a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, *a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process* unless: (i) the servicer has sent written notice pursuant to 12 C.F.R. §1024.41(c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied; (ii) the borrower rejects all loss mitigation options offered by the servicer; or, (iii) the borrower fails to perform under an agreement on a loss mitigation option" (emphasis added).

51. Comment 1 of the Official CFPB Interpretations to 12 C.F.R. §1024.41(f)(1)(i) provides that:

> Where foreclosure procedure requires a court action or proceeding, a document is considered the first notice or filing if it is the earliest document required to be filed with a court or other judicial body to commence the action or proceeding (e.g., a complaint, petition,

10

order to docket, or notice of hearing).

52. At the time the loss mitigation application at issue was facially complete, there was no sheriff's sale scheduled.

53. Submission #1 constituted a loss mitigation application pursuant to 12 C.F.R. § 1024.41. See *Plaintiff's Exhibit 1*.

54. On or about August 30, 2017, PNC sent DiCowden Request #1. See *Plaintiff's Exhibit 2*.

55. On September 29, 2017, DiCowden provided Submission #2 to PNC via email to Ed R. of PNC at Ed.R@pnc.com. See *Plaintiff's Exhibits 3-4*. DiCowden was required to submit the requested documents no later than September 29, 2017 pursuant to Request #1. See *Plaintiff's Exhibit 2*.

56. Submission #2 contained any and all documents requested by and through Request #1. See *Plaintiff's Exhibits 2-3*. Accordingly, PNC was in possession of a facially complete loss mitigation application on September 29, 2017. See *Id.*

57. Despite PNC being in possession of a facially complete loss mitigation application, Foreclosure Counsel scheduled the Initial Foreclosure on or about November 2, 2017. See *Plaintiff's Exhibit 7*.

58. On or before November 2, 2017, PNC had not considered DiCowden's eligibility for any and all loss mitigation options made available to her by his investor as required under 12 C.F.R. § 1024.41(c).

59. PNC's actions in allowing Foreclosure Counsel to schedule the Initial Foreclosure resulted in violation of 12 C.F.R. § 1024.41(b)(9) which each constitute a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(f).

11

60. PNC's actions are part of a pattern and practice of behavior in conscious disregard for Stephens's rights.

61. In addition to the damages outlined, *supra*, PNC's violation of 12 C.F.R. § 1024.41(f) directly and proximately caused DiCowden to incur actual damages including but not limited to attorneys' fees. See *Plaintiff's Exhibit 17*.

62. As a result of PNC's actions, PNC is liable to DiCowden for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO
## VIOLATION OF 12 C.F.R. § 1024.41(g)

### (Failure to prevent Foreclosure Counsel from scheduling the Second Foreclosure and the Third Foreclosure)

63. DiCowden restates and incorporates herein each of their statements and allegations contained in paragraphs 1 through 43 in their entirety, as if fully rewritten herein

64. DiCowden restates and incorporates herein each of their statements and allegations contained in paragraphs 45 through 49 in their entirety, as if fully rewritten herein.

65. DiCowden restates and incorporates herein each of their statements and allegations contained in paragraphs 52 through 56 in their entirety, as if fully rewritten herein.

66. 12 C.F.R. § 1024.41(c)(1) provides that "if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then…a servicer shall… [e]valuate the borrower for all loss mitigation options available to the borrower."

67. 12 C.F.R. § 1024.41(g) provides that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a

foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option."

68. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(g) provides that "[t]he prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale."

69. PNC discovered additional documents were required for the DiCowden's pending loss mitigation application several times over the next two (2) months. DiCowden promptly submitted all requested documentation to PNC upon receipt of the request. See *Plaintiff's Exhibits 6-7 and 9-10*.

70. On or about December 1, 2017, PNC sent DiCowden the Denial. See *Plaintiff's Exhibit 11*.

71. Unfortunately, PNC refused to consider DiCowden's eligibility for three (3) loss mitigation options stating in the Denial that they were unable to review DiCowden for such loss

13

mitigation options "because documentation has been received too close to the scheduled foreclosure sale date and does not allow sufficient time for review." See *Plaintiff's Exhibit 11.*

72. DiCowden's loss mitigation application was considered facially complete on September 29, 2017. Since no sheriff's sale had been scheduled as of September 29, 2017, PNC was required to treat DiCowden's loss mitigation application as having been received ninety (90) days prior to a scheduled sheriff sale pursuant to 12 C.F.R. §1024.41(c)(2)(iv).

73. PNC was required to review DiCowden for all loss mitigation options offered by her investor pursuant to 12 C.F.R. § 1024.41(c)(1)(i). The Denial explicitly states that PNC did not consider DiCowden for three loss mitigation options. See *Id.*

74. Despite the above, on or before January 9, 2018, and on or before April 11, 2018, respectively, Foreclosure Counsel scheduled the Second Foreclosure and the Third Foreclosure, respectively. See *Plaintiff's Exhibits 13 and 18.*

75. On or before January 9, 2018, and on or before April 11, 2018, respectively, PNC had not considered DiCowden's eligibility for any and all loss mitigation options made available to her by the investor of the Loan as required under 12 C.F.R. § 1024.41(c).

76. PNC's actions in allowing Foreclosure Counsel to schedule the Second Foreclosure and the Third Foreclosure resulted in violations of 12 C.F.R. § 1024.41(b)(10) which each respectively constitute a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(g).

77. PNC's actions are part of a pattern and practice of behavior in conscious disregard for DiCowden's rights.

78. In addition to the damages outlined, *supra*, PNC's violation of 12 C.F.R. § 1024.41(g) directly and proximately caused DiCowden to incur actual damages including but not limited to attorneys' fees. See *Plaintiff's Exhibit 17*.

79. As a result of PNC's actions, PNC is liable to DiCowden for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE
## VIOLATION OF 12 C.F.R. § 1024.41(c)

**(Failure to properly respond to a complete loss mitigation application)**

80. DiCowden restates and incorporates herein each of their statements and allegations contained in paragraphs 1 through 43 in their entirety, as if fully rewritten herein.

81. DiCowden restates and incorporates herein each of their statements and allegations contained in paragraphs 52 through 56 in their entirety, as if fully rewritten herein.

82. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

83. 12 C.F.R. § 1024.41(c)(1) provides that "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:(i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

84. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation

15

application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

85. As of September 29, 2017, PNC was in possession of a complete loss mitigation application by and through their receipt of Submission #2 and therefore were obligated to review such application for **all** available loss mitigation options in accordance with the requirements of 12 C.F.R. § 1024.41(c)(1). See *Plaintiff's Exhibits 1-4*.

86. Unfortunately, pursuant to the Denial, PNC refused to consider DiCowden's eligibility for three (3) loss mitigation options stating that they were unable to review DiCowden for these loss mitigation options "because documentation has been received too close to the scheduled foreclosure sale date and does not allow sufficient time for review." See *Id.*

87. PNC's failure to review DiCowden for three (3) separate loss mitigation options offered to her by the investor of the Loan constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(c).

88. PNC's actions are part of a pattern and practice of behavior in conscious disregard for DiCowden's rights.

89. In addition to the damages outlined, supra, PNC's violation of 12 C.F.R. § 1024.41(c)(ii) directly and proximately caused DiCowden to incur actual damages including but not limited to attorneys' fees. See *Plaintiff's Exhibits 15-16*.

90. As a result of PNC's actions, PNC is liable to DiCowden for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FOUR
## VIOLATION OF 12 C.F.R. § 1024.41(h)

**(Failure to provide the borrower an opportunity to appeal the denial of eligibility for an available loss mitigation option)**

91. DiCowden restates and incorporates herein each of their statements and allegations contained in paragraphs 1 through 43 in their entirety, as if fully rewritten herein.

92. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

93. 12 C.F.R. § 1024.41(c)(1) provides that "[t]he servicer shall include in this notice…a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

94. Comment 3 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(d) provides that the "*[d]etermination not to offer a loan modification option constitutes a denial. A servicer's determination not to offer a borrower a loan modification available to the borrower constitutes a denial of the borrower for that loan modification option, notwithstanding whether a servicer offers a borrower a different loan modification option or other loss mitigation option.*"

95. 12 C.F.R. § 1024.41(h)(1) provides that "[i]f a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower."

96. The Denial did not notify DiCowden of her right to appeal the denial of a loss mitigation option pursuant to 12 C.F.R. § 1024.41(c)(1)(ii). See *Plaintiff's Exhibit 13*.

97. PNC's failure to provide a notice to DiCowden regarding her right to appeal the Denial constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(h).

17

98. PNC's actions are part of a pattern and practice of behavior in conscious disregard for Shepherd's rights.

99. In addition to the damages outlined, supra, PNC's violation of 12 C.F.R. § 1024.41(h) directly and proximately caused DiCowden to incur actual damages including but not limited to attorneys' fees. See *Plaintiff's Exhibits 15-16*.

100. As a result of PNC's actions, PNC is liable to DiCowden for actual damages, statutory damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Marie A. DiCowden prays that this Court enter its order granting judgment in her favor as follows:

(A) A finding that PNC committed each of the violations of 12 C.F.R. § 1024.41 alleged in Counts One through Four;

(B) For actual damages in an amount to be determined at trial as to each and every count;

(C) For costs, and reasonable attorneys' fees;

(D) For statutory damages against PNC in the amount of Two Thousand Dollars ($2,000.00) as to each violation of 12 C.F.R. § 1024.41, as alleged by and through Counts One through Four; and,

(E) Such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DANNLAW
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539

18

Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Marie A. DiCowden*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DANNLAW
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Marie A. DiCowden*